DAUKSCH, Judge.
This is an appeal from a conviction for possession of a controlled substance. Because the trial court erred in denying the motion to suppress the controlled substance we reverse the conviction and order appellant discharged.
The facts as stated by appellant and ap-pellee in their briefs are that a deputy sheriff saw a car, occupied by appellant in the driver’s seat and another person next to him, parked on private property owned by a person who had complained about teenagers partying in the area. The deputy called for assistance and the two deputies approached the car on foot, one at each side, and ordered the occupants to get out. The occupants complied and, while they were standing away from the car, one deputy began to search the car because when he approached the car he saw the passenger “appeared to be doing something with his hand on the floorboard of the car.” Because of these movements and the possibility that appellant or the passenger might have a weapon stashed in the car, the search was conducted and cocaine and drug paraphernalia were found and seized. Although it is conceded that there is a perception that the search and seizure law and fourth amendment rights are somewhat complex, we suggest there are certain guidelines which are clear and certainly must be consistently followed by police and courts. Starting with the state and federal constitutions, which are paramount over the drug laws, it is firmly established that all persons are entitled to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Fla. Const. art. I, § 12. The definitions and interpretations of what searches are “unreasonable” are numerous, but certain firmly established guidelines are extant. Police may search an automobile when there is probable cause to believe that it contains contraband or fruits or instrumen-talities of crime.[1] Incidental to a lawful custodial arrest of an occupant the police may search the passenger compartment of an automobile.[2] When police are authorized to take a car into protective custody an “inventory search” is permitted. Certain other warrantless searches, such as border searches, are permitted but otherwise the search of a vehicle must be based on a warrant.
Florida’s stop and frisk statute is not applicable to cars, only persons, and is certainly not applicable here because no probable cause existed to believe either person had a weapon.[3] Furtive stuffing of *579 unknown objects under the seat of a car may make one curious or even suspicious about what was being handled but it does not give the police a right to search based on probable cause.
This search appears to have been a hunting expedition to see what could be found and the assertion that it was to protect the officers, who had not and were not going to arrest, rings hollow. The safety of the officers was established when the persons were required to move outside the car and away from the supposed danger zone. Because there is no basis upon which this search and seizure can be sustained and because suppression of illegally seized evidence is the only current remedy for unlawful seizures (and is the specific remedy applied in the stop and frisk statute) and because no conviction is possible without the drug evidence, we reverse the conviction and order appellant discharged.
We recognize a conflict with State v. Brown, 395 So.2d 1202 (Fla. 3d DCA 1981), but suggest that the authorities cited therein do not squarely support that court’s holding. We are of the opinion the facts in State v. Brown, 395 So.2d 1202 (Fla. 3d DCA 1981) are distinguishable from Brown v. State, 358 So.2d 596 (Fla. 2d DCA 1978) even though one cites the other as authority. In the earlier Brown case the trial judge could have reasonably found that probable cause existed to believe the defendants were armed and were about to commit a robbery. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Here, and in the later Brown case, we see no facts which would indicate the existence of probable cause. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), cited by the court in the later Brown case, involved a frisk of a person who exhibited a pronounced, weapon-like bulge in his jacket. There was no search of a car after suspicious furtive movements in the car. That case is not on point. Stevens v. State, 354 So.2d 110 (Fla. 3d DCA 1978) is aligned with State v. Brown, 395 So.2d 1202 (Fla. 3d DCA 1981) and vice versa. The court declared in Stevens: “While the officer did not articulate that he was fearful that the defendant had a weapon, the facts of the case are such that he was reasonably justified in conducting the search to protect his person.” Since the officer was not concerned about the defendant’s having a weapon, and the other facts set out in the opinion do not lead to any probable cause regarding a crime or contraband or a weapon, we must assume there were other facts. If not, then we are also in conflict with Stevens.
REVERSED.
ORFINGER, C.J., and COWART, J., concur.

. See § 933.19, Fla.Stat. (1981).

. See New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

. Section 901.151, Florida Statutes (1981) provides:
(1) This section may be known and cited as the "Florida Stop and Frisk Law.”
(2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
(3) No person shall be temporarily detained under the provisions of subsection (2) longer than is reasonably necessary to effect the purposes of that subsection. Such temporary detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.
(4) If at any time after the onset of the temporary detention authorized by subsection (2), probable cause for arrest of person shall appear, the person shall be arrested. If, after an inquiry into the circumstances which prompted the temporary detention, no probable cause for the arrest of the person shall appear, he shall be released.
(5) Whenever any law enforcement officer authorized to detain temporarily any person *579 under the provisions of subsection (2) has probable cause to believe that any person whom he has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, he may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.
(6) No evidence seized by a law enforcement officer in any search under this section shall be admissible against any person in any court of this state or political subdivision thereof unless the search which disclosed its existence was authorized by and conducted in compliance with the provisions of subsections (2)-(5).