464 So.2d 691 (1985)
STATE of Florida, Appellant,
v.
Charles WALDEN, Appellee.
No. 84-1500.
District Court of Appeal of Florida, Fifth District.
March 7, 1985.
Jim Smith, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellant.
No appearance for appellee.
ORFINGER, Judge.
The trial court ordered suppression of a hand gun seized from appellee Charles Walden by an officer of the Orlando Police Department. The State appeals[1], and we reverse.
At the hearing on the suppression motion Officer Laws of the Orlando Police Department testified that he was investigating a report of a prowler in a residential neighborhood. In the course of patrolling the neighborhood Laws noticed Walden walking in the street, carrying a duffel bag. *692 Laws was driving an unmarked patrol unit and, although Walden did not match the description of the prowler, he noticed Walden because he kept turning around staring at the officer's car as he was walking northbound.
Walden started up the driveway of a private residence when Officer Laws stopped his car, approached Walden and identified himself. Laws testified that he asked Walden if he resided in the house and when Walden answered that he lived there with an aunt, Laws asked him if he had seen anything suspicious in the neighborhood. Laws was familiar with the neighborhood and many of the people who lived there, and was not certain that Walden lived in that house. Laws then inquired about the contents of the duffel bag Walden was carrying. Walden answered that he was carrying some dirty linen, and Laws asked if Walden minded if he looked in the bag. Walden then started taking the linen out of the bag and placed the open bag on a chair which was in the driveway. Looking into the open bag, Laws saw the handle of a revolver. He seized the revolver and placed Walden under arrest for possession of a concealed firearm.
Walden did not testify at the suppression hearing and therefore the only evidence available to the trial judge was Laws' testimony. Based on this, it is clear that Laws approached Walden in the manner of a street encounter rather than as part of a stop. In Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889, 901 (1968) the United States Supreme Court recognized that street encounters between citizens and police officers are "incredibly rich in diversity"; they range from exchanges of useful information to hostile confrontations. In U.S. v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) the court noted that characterizing every street encounter between a citizen and the police as a "seizure" would impose undue restrictions on a wide variety of legitimate law enforcement practices, including effective police investigation.
Recently, in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the court elaborated that law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. See Dunaway v. New York, 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824, 834 n. 12 (1979); Terry, 392 U.S. at 32-33, 88 S.Ct. at 1885-6, 20 L.Ed.2d at 909-10. (Harlan, J., concurring). The person approached need not answer any question put to him, and may decline to listen to the questions and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so and his refusal to listen or answer does not, without more, furnish those grounds. Royer, 460 U.S. at 498, 103 S.Ct. at 1324.
The Florida supreme court restated these principles in Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1330, 74 L.Ed.2d 725 (1984), where it discussed the differences between a "stop" and an encounter, explaining:
In Terry, the Supreme Court noted that "[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the street." 392 U.S. at 34, 88 S.Ct. at 1886 (White, J., concurring). This is so even under normal conditions with officers having no concrete suspicion on which to rely. Of course in such situations a person would be under no duty to remain, and could continue on his way if he chose to do so. That person, instructed the Terry Court, "absent special circumstances may not be detained or frisked but may refuse to cooperate and go on his way." Id. (Emphasis added).
There exists, therefore, a distinction between an instrusion by police amounting to a "seizure" of the person and an encounter which intrudes upon no constitutionally protected interest. Terry v. *693 Ohio; United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); United States v. Elmore, 595 F.2d 1036 (5th Cir.1979), cert. denied, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980).
* * * * * *
The Supreme Court has repeatedly acknowledged the need for police questioning as a tool for effective enforcement of our criminal laws. United States v. Mendenhall. Florida courts have recognized that, in this context, law enforcement officers can indeed initiate contacts with citizens without creating a stop and seizure situation.
Id. at 387, 388.
Here, as in the cited cases, the police officer approached Walden, asked him if he lived in the house they were standing in front of, asked what was in the bag and if he could look inside. Walden was under no compulsion to listen or to respond. Walden voluntarily began to extract the contents of the bag and placed the open bag on a chair. The police officer did not explore or probe into the bag, but from where he lawfully stood in the driveway, could see the handle of the revolver. The revolver came into "open" view as a result of Walden's actions, Ensor v. State, 403 So.2d 349 (Fla. 1981), giving the officer probable cause to believe that Walden had committed the crime of carrying a concealed weapon. He was then justified in seizing the weapon and arresting Walden. Section 901.151(5), Florida Statutes (1983); Herring v. State, 393 So.2d 67 (Fla. 5th DCA 1981).
Because we find that Walden's encounter with Laws was nothing more than a "street encounter" and not a stop, and that the revolver came into Laws' view because of the voluntary act of Walden in opening and placing the bag where Laws could see its contents, the trial court's order of suppression of the hand gun was error, and accordingly we reverse and remand for further proceedings consistent herewith.
REVERSED and REMANDED.
COBB, C.J., and FRANK D. UPCHURCH, Jr., J., concur.
NOTES
[1] Fla.R.App.P. 9.140(c)()(B).